GUIDRY, Judge.
Plaintiff, Clarence Lee Moore, filed this suit individually and on behalf of his minor daughter, Vanessa Diane Moore, seeking to recover damages allegedly incurred as a result of injuries sustained by his daughter when she slipped and fell in a self-service convenience store in Sulphur, Louisiana. The Southland Corporation is owner of the store and Travelers Insurance Company is the liability insurer of the premises.
The facts giving rise to this litigation are not seriously in dispute.
The grocery store in question is a self-service convenience store of average size and contains about eight aisles running generally north and south. There is a checkout counter located in the front or south side of the building. The store is tended by two employees during the day shift (7:00 a. m. to 3:00 p. m.) and by two employees during the evening shift (3:00 p. m. to 11:00 p. m.). Normal procedure requires one employee to man the checkout counter and the other to handle the meat counter located in the rear of the building (along the north wall).
On January 8, 1975, the store manager, Vernon Gott, and Elvin Nolen, a clerk, worked the day shift and Corbitt O’Neal and his son, David, worked the evening shift.
On the aforesaid date, shortly after 4:00 p. m., Vanessa Diane Moore and her mother, Burella, entered the store for the pur *704 pose oí securing certain needed items. By prearrangement each was to secure different items. Vanessa selected a 1 lb. can of coffee and then went to the aisle where the bread was displayed. As Vanessa approached the bread rack she reached for a loaf of bread and as she did so she slipped and fell backwards landing on her back. Vanessa was rendered unconscious. Mrs. Moore did not see her daughter fall, however, she was alerted as a result of the noise and immediately went to her daughter. Mrs. Moore knelt beside her daughter to minister to her and thereupon observed that her daughter’s hair and clothing were wet as a result of a clear, odorless, non-sticky liquid on the tile floor. When asked to estimate the amount of liquid present on the floor at the point where her daughter fell, Mrs. Moore suggested about one or two teacups full. At this point, someone in the store informed Corbitt O’Neal of the accident and he immediately went to the assistance of Mrs. Moore and her daughter. Mr. O’Neal testified that he too noticed a damp or moist spot on the floor near where Vanessa lay. An ambulance was then called and Vanessa were taken to West Calcasieu-Cameron Hospital for emergency treatment. Upon arrival at the hospital Vanessa was seen by a Dr. Bugg who after a thorough examination, including x-rays, released Vanessa to return home. Thereafter, Vanessa remained under the care of Dr. J. W. Ambrister as an outpatient until March 17, 1975.
The record contains no evidence regarding the identity .of or the quantity of the substance on the floor of the store other than the testimony of Mrs. Moore and the store employee, Mr. O’Neal. The other employee, David O’Neal, who was presumably in the store at the time of the accident did not testify. The trial court concluded that the substance on the floor was water.
Willy Gott, store manager, and Corbitt O’Neal, one of the employees on duty at the time of the accident, testified concerning the inspection and cleanup procedure followed at the store. Both testified that each evening between 7:00 p. ,m. and 8:00 p. m. the floor of the store was swept clean and thereafter wet mopped. Other than this general cleanup each evening the floor was cleaned only if something was spilled. There is no evidence in the record that the manager or the employees regularly inspected the aisles to determine if the floor and passageways were clean. The store manager, Mr. Gott, did testify that prior to leaving the store on the afternoon of January 8,1975 he inspected the floor and found it to be clean and free of any foreign substance, however, his testimony in this regard does not indicate that he made a careful inspection of all of the aisles and passageways. In this connection Mr. Gott testified as follows:
“Q. Before you departed for home from the store, what, if anything, did you do?
A. Well, you know, I take a general look-around to make sure everything is in good shape, and tell them what I need done, and then I leave.
Q. Would you describe to the Court what your general look-around consists of?
A. I look . . . because this is a thing that often happens. I look for . . . I go to the produce rack, which was then on the left-hand side, on the west side, we have produce box. I look for that, and then I look for other stuff that may have gotten on the floor. But, primarily, where my produce is, I look to make sure there’s nothing on the floor because that is . you know, that a dangerous thing to have on the floor, lettuce leaf and stuff like that. Of course, I’m you know, you may overlook it a day or so, but most of the time I take a general look to make sure everything is in . . (Tr. pages 280 and 281. Emphasis mine)
It is interesting to note that the bread rack, where the accident occurred, is located across the building from the produce bins.
After considering all of the evidence the trial court concluded that there was a for *705 eign substance on the floor, i. e., water; it was not put there by Vanessa Moore and she did not see it; and, it caused her to slip, fall and injure herself. Having thus found the trial court determined pursuant to Kavlich v. Kramer, 315 So.2d 282 (La.1975) and Gonzales v. Winn-Dixie Louisiana, Inc., 326 So.2d 486 (La.1976) that the burden then shifted to the store owner to exculpate itself from negligence. We discern no manifest error in these findings.
The trial court next concluded that defendant’s inspection and cleanup procedures were inadequate and therefore, that it failed in its duty to protect customers from foreign substances on the floor. Accordingly, the trial court rendered judgment in favor of the plaintiff, individually, awarding special damages in the principal sum of $125.27 and general damages to plaintiff, on behalf of his minor daughter, Vanessa, in the principal sum of $2500.00. Defendant appealed and urges (1) that the trial court erred in failing hold that the inspection and cleanup procedures of defendant were reasonable; and, (2) in. awarding excessive general damages.
In Gonzales v. Winn-Dixie Louisiana Inc. (supra) our Supreme Court defined the duty of a store owner to protect customers from foreign substances on the floors, aisles and passageways, to be as follows:
“The duty of a store owner to protect his customers from foreign substances on the floor is one of reasonable care under the circumstances. Reasonable protective measures, including periodic inspections, must be taken to keep the aisles and floors free of substances or objects that may cause customers to fall. Kavlich v. Kramer, La., 315 So.2d 282 (1975); Tripkovich v. Winn-Dixie of Louisiana, Inc., La.App., 284 So.2d 80 (1973); Fontanille v. Winn-Dixie Louisiana, Inc., La.App., 260 So.2d 71 (1972), cert. denied, 261 La. 1064, 262 So.2d 44 (1972); Prosser, Law of Torts, § 61, pp. 392-393 (4th ed. 1971). The circumstances that determine the reasonableness of protective measures include the type and volume of merchandise, the type of display, the floor space utilized for customer service, the nature of customer service, and the volume of business. As we recently noted, the self-service grocery system requires customers to focus their attention on the shelves and to handled merchandise. The system increases the risk of harm from objects dropped on the floor by customers and, correspondingly, the duty to minimize the risk by frequent inspections and cleanups. See Kavlich v. Kramer, supra; Prosser, Law of Torts, § 56 p. 349 (4th ed. 1971).”
In the instant case, as aforestated, the accident occurred at 4:15 p. m. on January 8, 1975. The floor in defendant’s store was last cleaned some 20 hours before. There is no evidence in the record that the manager or employees regularly inspected the floors to determine if they were clean. The manager left the store some 45 minutes prior to the accident and upon his departure, admittedly, took only a “general look-around” to determine if everything was alright. Under these circumstances the trial court concluded that the defendant’s inspection and cleanup procedure was inadequate. We find no manifest error in this determination. There was evidence before the trial judge which furnished a reasonable factual basis for this conclusion. Canter v. Koehring Co., 283 So.2d 716 (La.1973).
Defendant finally complains that the trial court’s award of general damages is excessive.
As a result of her fall, Vanessa sustained a cervical straining type injury. She was never hospitalized, however, she was confined to bed for several days. During the following several weeks her physical activities were seriously curtailed and she experienced neck and shoulder pain and intermittent headaches. She was required by her physician to wear a cervical collar for about eight weeks. She was last seen by Dr. Ambrister, her treating physician, on March 17, 1975. As a result of this last examination Dr. Ambrister concluded as follows:
“The patient was thought to have incurred a cervical straining type of injury. When she was seen most recently, the greatest part of symptoms had subsided. *706 It was thought she would be able to return to her usual activities. She may expect occasional discomfort of headaches over a period of an additional 4 to 6 weeks. An eventual complete recovery should take place without resulting disability.”
As aforestated the trial court awarded general damages in the principal amount of $2500.00. Defendant-Appellant complains that this award is excessive.
While the amount awarded is, in our opinion, generous considering the finding of the trial court that Vanessa and her mother tended to exaggerate the former’s pain and the length of her convalescence, we cannot say that the trial judge abused the great discretion allowed the trier of fact in awarding damages. R.C.C. Article 1934; McDonald v. Fidelity & Casualty Company of New York, 317 So.2d 267, (La.App. 3rd Cir. 1975); Bitoun v. Landry, 302 So.2d 278 (La.1974); Fox v. State Farm Mutual Automobile Insurance Co., 288 So.2d 42 (La. 1973).
For the above and foregoing reasons the judgment of the trial court is affirmed, defendant-appellant to be cast for all costs of this appeal.
AFFIRMED.