Barbara J. JONES, Plaintiff-Appellant,

v.

T.G. & Y. STORES COMPANY, et al.,
Defendants-Appellees.

No. 84–4719.

United States Court of Appeals,
Fifth Circuit.

Nov. 6, 1985.

Rehearing and Rehearing En Banc
Denied Jan. 2, 1986.

Hunter & Plattsmier, Elwood C. Stevens, Jr., Morgan City, La., for plaintiff-appellant.

Gibbens & Blackwell, J. Louis Gibbens, New Iberia, La., Pugh & Boudreaux, Charles J. Boudreaux, Jr., Lafayette, La., for defendants-appellees.

Before GOLDBERG, JOLLY, and HIGGINBOTHAM, Circuit Judges.

## OPINION

PATRICK E. HIGGINBOTHAM, Circuit Judge:

We are required to determine whether the district court was correct to apply principles of comparative fault in a Louisiana diversity case that involved a customer's slip and fall accident in a commercial retail establishment. We affirm.

I

On November 25, 1981, plaintiff Barbara Jones was shopping with her husband and a friend in a T.G. & Y. store in Morgan City, Louisiana. Unobserved by her companions or anyone else, she stepped into an electrical outlet hole and fell to the floor. Mrs. Jones did not exhibit any signs of injury at the time. That night, she reported the accident to T.G. & Y. and sought medical treatment for back pain. Eventually, she brought suit in federal district court against T.G. & Y. and its insurer on theories of negligence and strict liability. At trial, the defendants sought to establish that Mrs. Jones' injuries were exclusively, or at least primarily, the result of an accident she suffered in her home; in addition, the defendants claimed that Mrs. Jones' own negligence contributed to the accident at the store and asked that any damages be reduced accordingly.

The jury found that the hole in the floor was a defect in the T.G. & Y. premises; that Mrs. Jones was negligent; and that both the defect and her negligence were causes of her injury. Total damages were fixed at $50,000. The jury further found that Mrs. Jones' own fault was ninety percent responsible for the damages, with the remaining ten percent attributed to the defect in T.G. & Y.'s premises. The jury findings were well supported by the evidence.

The district court, applying comparative fault principles, awarded the plaintiff $5,000.00.

## II

The plaintiff's principal argument on appeal is that ordinary contributory negligence is not a defense to actions brought under articles 2317 [1] and 2322 [2] of the Louisiana Civil Code. Louisiana law is, and for some time has been, unclear about the precise legal relation between plaintiffs' and defendants' fault in cases of this kind. Faced with such uncertainty, a federal diversity court must attempt to predict how the Louisiana courts would decide the case at bar. We confine ourselves to that undertaking.

Two years ago, a panel of our court engaged in a detailed examination of the Louisiana law of victim fault. After canvassing the Louisiana authorities on the victim-fault defense to a strict liability claim, Judge Widsom's thoughtful opinion explained that such a defense is available despite certain conceptual difficulties:

> [T]he Louisiana doctrine of strict liability encompasses elements of negligence, at least, in determining the test of the defendant's liability and the victim's fault....
>
> ... "[T]he concept of 'victim fault,' as used as a defense to a strict liability claim in Louisiana, is a proximate relative to the concept of 'contributory negligence'.... [It is incorrect to] assert that contributory negligence is not a defense to a strict liability claim, and that only conduct amounting to assumption of risk will relieve the defendant of strict liability under Louisiana law. This is clearly not the present law in Louisi-

ana...." Gaudet, The Application of Louisiana's Strict Liability Law on the Outer Continental Shelf: A Quandry for Federal Courts, 28 Loy.L.Rev. 101 (1982).

> ....
>
> ... "Victim-fault" encompasses contributory negligence and may be a defense to an action brought under Article 2322 of the Louisiana Civil Code, if it is a substantial cause of the injury. This is not to say "contributory negligence" and "victim-fault" are synonymous terms. It is evident from the cases that victim-fault encompasses assumption of risk and that it does so in many cases in which the defendant raises defenses of both contributory negligence and assumption of risk.

*Hyde v. Chevron, U.S.A., Inc.,* 697 F.2d 614, 628–29 (5th Cir.1983). Louisiana's comparative fault statute [3] became effective on August 1, 1980, after the accident at issue in *Hyde,* and was therefore not applicable in that case. Judge Wisdom pointed out, however, that Louisiana's basic doctrines of strict liability and contributory negligence suggested that the comparative fault statute should apply to strict liability cases. *Id.* at 628–29 and nn. 18, 20.

This prediction was essentially confirmed in *Bell v. Jet Wheel Blast,* 462 So.2d 166 (La.1985). In that case, the Louisiana Supreme Court was asked to decide whether contributory negligence or comparative fault is a defense in strict liability cases. The court concluded that contributory negligence could not serve as an automatic bar to recovery in a strict liability claim, but that comparative fault principles would often be applicable. *Id.* at 171. Speaking of

---

1. "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications." La.Civ.Code Ann. art. 2317 (West 1979).

2. "The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction." La.Civ.Code Ann. art. 2322 (West 1979).

3. Acts 1979, No. 431, § 1, amended Civil Code article 2323 to read as follows: "When contributory negligence is applicable to a claim for damages, its effect shall be as follows: If a person suffers injury, death or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the claim for damages shall not thereby be defeated, but the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death or loss." La. Civ.Code Ann. art. 2323 (West Supp.1985).

products liability in particular, the court said: "Where the threat of a reduction in recovery will provide consumers with an incentive to use a product carefully, without exacting an inordinate sacrifice of other interests, comparative principles should be applied for the sake of accident prevention." *Id.*

The court also decided that comparative fault analysis would be inappropriate in some cases and that *Jet Wheel* itself fell into that category. The court pointed out that the "plaintiff was injured while performing a *repetitive* operation with a defective industrial machine *as required by his employer,*" *id.* at 172 (emphasis added), when his hand was injured through a combination of his own inattentiveness and the machine's defect. The court concluded that in these circumstances, application of comparative fault would not significantly increase employees' incentives to protect their hands from being mangled and that it would decrease the manufacturer's incentives to produce a safe product. *Id.*

The *Jet Wheel* opinion stressed the narrowness of its own holding and the large role that it expected other courts to play in the future development of the relevant doctrines: "[T]he question of whether other classes of cases fall within the category to which comparative fault may apply must be decided on a case-by-case basis.... The problems are more appropriately resolved at the trial level in a practical manner instead of a theoretical solution at appellate level.'" *Id.* at 172–73 (citation omitted).

We are persuaded that the trial court in the case at bar was correct to apply comparative fault principles. A worker in an industrial setting has little choice but to use the machinery supplied by his employer; as a group, such workers therefore have very limited ability to exchange appropriate economic signals with the manufacturers of defective machines. Furthermore, a worker who must use dangerous machinery for many hours of the week has strong immediate incentives to avoid injuring himself *and* will have special difficul-

ties in maintaining the virtually constant vigilance that would preclude "victim fault." Unlike a worker using dangerous machinery to perform repetitive tasks under the direction of his employer, a customer walking down the aisle of a public retail store is fully open to the economic incentives provided by a comparative fault regime. Conversely, to foreclose the use of comparative fault would subject the proprietors of such premises to perverse incentives; expenditures on preventing accidents would tend to rise to an inefficient level and non-negligent customers would inappropriately bear the burden of increased prices. *Cf. Lewis v. Timco, Inc.,* 716 F.2d 1425, 1432–33 (5th Cir.1983) (en banc) (setting forth economic justifications for comparative fault analysis). The distortion of appropriate incentives would be vividly illustrated by a case in which full recovery was allowed to a plaintiff who was herself responsible for fully ninety percent of the fault. We are persuaded that "the threat of a reduction in recovery will provide consumers with an incentive to use a [retail store's premises] carefully, without exacting an inordinate sacrifice of other interests." *Cf. Jet Wheel,* 462 So.2d at 171.

Our decision, which is based primarily on our reading of *Jet Wheel,* is not altered by *Dulaney v. Travelers Ins. Co.,* 434 So.2d 578 (La.App.1983). That opinion, handed down by an intermediate court before the Louisiana Supreme Court's *Jet Wheel* decision, contained a dictum suggesting that "[g]enerally, ... slip and fall cases occurring in display areas would fall [into a category] where the defendant's duty extends to the protection of a plaintiff against his own carelessness," so that comparative fault analysis would not apply. *Id.* at 582. It is true that plaintiffs will often obtain full recoveries in such cases. This, however, is simply the result of the burden-shifting device announced in *Kavlich v. Kramer,* 315 So.2d 282 (La.1975) (cited in *Dulaney* ), a device that does not imply a legal rule against application of comparative fault to slip and fall cases occurring in retail store display areas. *See Brown v. Winn-Dixie Louisiana, Inc.,* 452

So.2d 685, 686–87 (La.1984). To whatever extent *Dulaney*'s dictum conflicts with *Jet Wheel, Jet Wheel* must govern.

The judgment of the district court is AFFIRMED.