MORIAL, Judge.
Plaintiff filed this suit against Schweg-mann Brothers Giant Supermarkets, Inc., to recover damages for personal injuries and medical expenses resulting from a fall which she alleged was caused by slipping on discarded ice cream on the floor of one of the defendant’s supermarkets. Defendant answered, denying negligence on its part, asserting negligence on the part of the plaintiff, and filed a third party demand for indemnity against Norman Enterprises, Inc. and its insurer, Allstate Insurance Company, respectively, the operator of an ice cream concession in the vicinity of the fall and its insurer.
After a trial on the merits, judgment was rendered in favor of plaintiff and against Schwegmann Brothers in the sum of $1,430.00 — $1,000.00 for pain and suffering *1165 and the remainder for medical expenses. The judgment also dismissed defendant’s third party demand against Norman Enterprises and Allstate.
Schwegmann has prosecuted this appeal from that portion of the judgment awarding damages against it. Schwegmann has not appealed from that part of the judgment dismissing its third party demand and that aspect of the case is not before this court. Plaintiff has answered the appeal seeking an increase in the award for pain and suffering.
On the evening of July 3, 1971, plaintiff was a customer in defendant’s store at 5300 Old Gentilly Road in New Orleans. She completed her shopping and passed through the check-out line without incident. However, before leaving the store, plaintiff decided to purchase some roasted nuts. Leaving her loaded grocery cart with a store employee for safe keeping, she proceeded to a roasted nut counter located between the entrance doors and check-out counters in an area approximately 35 ft. wide by 450 ft. long. This is the area where customers enter and exit the store. Before reaching the nut counter she slipped on what she later learned was ice cream.
Plaintiff testified that at the time of her fall she did not see the ice cream; she claims she first saw melted ice cream on the floor sometime after she had fallen and had received assistance. Plaintiff estimated she was twelve feet from the roasted nut counter when she fell.
The confusing and frequently conflicting jurisprudence in slip and fall cases, particularly on the issue of burden of proof, appears to have been settled by the Supreme Court of Louisiana in the recent cases of Gonzales v. Winn-Dixie Louisiana, Inc.[1] and Kavlich v. Kramer,[2] both of which were handed down subsequent to the rendition of judgment in the instant case. In both cases the court held that when the plaintiff-customer proves there was a foreign substance on the floor, not there due to his or her fault, which caused the plaintiff to slip, fall and be injured, the defendant-store must assume the burden of exculpating itself from negligence. When, as here, it appears that a third person dropped the foreign substance, the store owner must establish that periodic inspections were made and other reasonable protective measures were taken to keep the aisles and floors free of substances or objects that may cause customers to fall. Gonzales, supra.
Of course, contributory negligence is also a possible defense, but we find no such negligence in the instant case. Another possible defense is that the foreign substance was on the floor for such a short period of time that even a most reasonable inspection procedure would not have removed its presence in time for removal before plaintiff fell.
We are not able to determine the length of time the ice cream was on the floor. The only evidence on the subject was offered by plaintiff herself. She testified she “almost” lost consciousness as a result of the fall; a security guard and another store employee assisted her from the floor and helped her sit in the area where groceries were placed into bags for customers, a procedure which consumed several minutes. Her testimony as to the time which elapsed between the fall and when she first saw the ice cream on the floor varies between a period of several minutes to an hour. Thus, the fact that the ice cream was melted when first seen by plaintiff proves nothing as to the length of time it had been on the floor prior to plaintiff’s fall. Insofar as is shown by the record, at the time plaintiff fell the ice cream could have been on the floor for a very short time or for a comparatively long time.
Our next question is whether the defendant’s periodic inspections and cleanup procedures were sufficient to discharge its burden in the instant case.
Don Hughes, the assistant store manager on the night in question testified the mana *1166 ger, assistant manager, three security personnel, a floor supervisor and a porter supervisor were to constantly patrol the aisles of the store with instructions to remove any debris found on the floor or contact a porter to do so immediately. In addition, stock clerks were assigned to each aisle of the store with similar instructions. On the night in question there were at least ten porters on duty in the store to attend to cleanup procedures of this nature.
Joe Walker, the porter supervisor on duty at the time of plaintiff’s fall, stated he had between ten and twelve porters on duty at the store. Each porter was assigned to a section of the store with instructions to make a round-trip inspection of his section at fifteen to twenty minute intervals. Walker testified that he himself took part in some of the cleaning in the store. At the time of plaintiff’s accident, Walker had assigned Will Matthews to the area in which plaintiff fell, and Matthews was assisted by another man.
Matthews, the porter assigned to the portion of the store where plaintiff fell, confirmed he had a man on duty with him at the time. The procedure followed by him and which he instructed the other porter to follow was to cover each section of the area to which he was assigned once every fifteen to twenty minutes. Matthews indicated he and the other porter patrolled an area approximately thirty feet wide by half a block long. While there was some dispute at the trial regarding the half block measurement, it appears Matthews and his assistant were assigned to patrol an area approximately 35 ft. wide and 450 ft. long.
While the record does support the conclusion that the defendant had established a system of cleanup procedures, it is devoid of evidence from which to conclude that the scheduled cleanup or inspection procedures were in fact carried out. Further, the spill of ice cream was within plain view of everyone in the heavily traversed area between the entrance doors and thirty-five (35) check-out counters. The two porters on duty in the area where plaintiff fell should have seen that which was obviously discoverable by them. There is no showing from the record that any of the check-out cashiers or baggers were in a position where they could have seen the ice cream on the floor. Nevertheless, it is inescapable under the circumstances of this case that the defendant failed to discharge its burden of proving that it was reasonably prudent in its exercise of duty and care owed to a customer in a self service grocery store. Kavlich, supra.
Our careful evaluation of plaintiff’s injuries compels us to conclude that the award to her is reasonable, fair and adequate.
For the foregoing reasons the judgment of the district court is affirmed.

AFFIRMED.

. 326 So.2d 486 (La. 1976).

. 315 So.2d 282 (La.1975).